143987 James G. Woudenberg v. United States Department of Agriculture Health Inspector Oral Argument Not to Exceed 15 Minutes per Side Ms. Kahn for the petitioner Good morning, your honors. I have reserved two minutes. This case, on the surface, is a very simple issue of legal interpretation, and we have asked to come here today in part because we believe it goes far beyond that. It is a very important, pivotal case that demonstrates the failure of the due process system within the Department of Agriculture. But the context in which this court considers that is the issue of deference. The facts are not in dispute. The ALJ dismissed the complaint against James Woudenberg. The judicial officer made findings of fact which we have absolutely no disagreement with whatsoever. It is simply the judicial officer's disagreement with the ALJ's interpretation of a regulation within the USDA that is at issue here. And because the USDA had a notice and comment period for their regulation, which was very The question for this court is whether the judicial officer's personal interpretation is entitled to any deference at all, whether it is persuasive. When you read these agency responses, with all due respect, they simply don't corroborate what you say they say, or at least the import that you attach to that. They don't say that D now creates an exception to A or overrides A. I mean, you can go back to the language if you want to, but I understand that's what you think they meant, but it isn't what they said. Well, I think that that's, again, with all due respect, if you go back to the history, what preceded D, D replaced something. D replaced 2.132B, and the former language was... Where do you even drive the conclusion that it actually replaced something as opposed to being added? Because it's hard to find any basis for that assertion. I know that's what you think happened, but where do you, what's the basis of that? I'm looking at the former version, which, when you go to the federal record, you look at the former version of 2.132, and then the change in 2004, and that's where D was added and the old B was removed. B previously... Was there some indication that the B was removed because it wasn't necessary because of the definition in 1.1? No, the definition in 1.1 was always there. Right, which made it duplicative. That is what it says. They said they were taking it out because it was duplicative of the rule. What was in the rule before was that a bee dealer shall not obtain live random source animals, dogs and cats, from individuals which have not bred and raised the dogs and cats on their own premises. In practice, the case of Cece Baird, which we cite in our brief, an opinion by this specific judicial officer said that that was a provision that was not enforced. That was from the testimony of the USDA itself. It went on at length to explain that throughout the system, there were animals that were being that the agency was permitting this with the proviso that they would be limited to 25 per year and that there would be records kept as to who the source of those animals were and whether they had bred and raised them. That was what the USDA judicial officer, the same judicial officer, held in the Cece Baird case. It was after that that they changed the provision to recognize that this was their procedure, that the bee dealers could accept animals from individuals if they signed a certification that said that the animal had been born and raised by them. I can see how that might be a plausible interpretation, but if you could go with me through the plain meaning of these regulations, would you agree that if a reasonable reader of these would disagree with you, then that's kind of the end of the case? I would not agree with that for... We don't have to... So if the judicial officer read these on their face in a reasonable way, it would still be wrong? I mean, isn't that contradictory to all we know about agency reading of its own regulations? Not in this case. I'd like to back up... In any event, let's go through it, okay? Section A of 2.132 says you can only obtain random live, random source dogs and cats from 1, 2, or 3, right? Correct. And this isn't 1, 2, or 3, right? Correct. So that, in effect, means you can't obtain live, random source dogs, given that you haven't gone through 1, 2, or 3. So it all depends on whether this is a live, random source cat or dog, right? Under the plain meaning of the regulation. Under the plain meaning of the regulation and regulatory construction, same as statutory construction, you look at two things, actually three things. I'm asking a yes or no question here. I'm sorry. If you don't... Well, let's assume we're in a world where the particular individual we're talking about has not gone through 1, 2, or 3, okay? Just assume that for the moment, because that's the facts, right? In this case, he has not gone through 1, 2, or 3. He didn't get it from another dealer who was licensed, he didn't get it from a pound, and he didn't get it from some, whatever the third category there is, right? Correct. Under A. Okay. So it's not... And he's a Class B dealer, which is what A applies to. Yes. All right. So he can only obtain a live, random source dog or cat from one of these three, and it's not one of these three, which means he can't obtain a live, random source dog or cat, if you accept those assumptions, right? If you read A in isolation, and that's where I think... That's what I'm reading it. Yeah, exactly. I'm reading it in isolation. He can't do it. Okay. So then we go next to the definition of what's a live, random source dog or cat, right? In order to see whether he's violated this thing which says he can't get a live, random source dog or cat unless he's done 1, 2, or 3, and he hadn't done 1, 2, or 3. With me so far? Absolutely. If you're reading just... So the one, section 1.1 says, random source dog or cat means a dog or cat obtained from who did not breed or raise them on his or her premises. So if you read that, this is a live, random source dog or cat, because we know from the facts of the case that they were not bred or raised on the premises of the person from whom he obtained the cat or dog. Is that correct? That's correct. So if you just look at those two things, there's a violation. Then we see this, which says in the second sentence of 2.1.32d, which I gather is what you're relying on, it says, no dealer or exhibitor shall knowingly obtain any dog or cat from any person who is not licensed other than a pound or shelter without obtaining a certification that the animals were born and raised on the person's premises. So you could read that as changing what otherwise was the pretty clear meaning of the two provisions that we just went through, or you could read it as creating a paper trail in order to investigate and make sure that those first two provisions were complied with. I think the latter reason, the latter reading is probably stronger, but even if they're of equal strength, you can't say that the second reading is just null, can you? The second reading makes sense. You could have a scheme where you can't do this, and in order to make sure you're not doing it, you have to get a certificate. You get the certificate, but it turns out the certificate is false, and so you've still done it. That's the way that the judicial officer reasoned. It looks tough. Arguably, it's misleading to the layman a little bit that they might think if they got the certificate, they're covered, but the literal meaning of it doesn't cover you, does it? Well, here's where the judicial officer, I think, missed the mark, and that is you interpret regulations the same way you do statutes. There are rules. If you interpreted this as a statute, I would probably reluctantly at the end of the day say, this was a random source dog or cat, and therefore, you lose, because it has two requirements. One is that you don't do it, and one is that you get a certificate that you haven't done it. He got the certificate, but he did it, so he violated it. That seems to be the literal meaning of it. In all statutory and regulatory interpretations, there are rules that we apply. One of them is that if one section is more specific than another, that is the section that takes the money. That doesn't appear to be more specific. That's if they're inconsistent, though, right? Here's your problem. D is not limited to Class B dealers. It doesn't say anything about Class B dealers in D. The entirety of 2.132 applies to Class B dealers, but let me just add that it's not just the specific and the general. It is the later created. You are precluded from doing X regulation, and then you could have a later. In order to make sure that you do X, you have to take this precaution in a later regulation if it's not inconsistent, and later in time can apply, but the first one is still there. That's the trouble I'm having. I'm sympathetic with your argument. It looks a little abusive to me, to be candid, but I'm having trouble getting around the language, which just doesn't seem to support you. While you're answering that, I want you to think about, I'm looking at 2.132. There's not an introductory paragraph that says that they're talking in all of the subsections about Class B dealers. A, it says it's talking about Class B dealers. B, it's talking about no person. C, it's talking about dealers, exhibitors, research facilities, so on. D is talking about no dealer or exhibitor. They use Class B dealer when they want to, and they don't use it when they don't want to. When you're looking at this, I understand how you want this to come out, but D is not more specific than A. In fact, D is broader than A, so your whole canon doesn't help you. I think that if you go on to the next canon, which is the later enacted, and that's- But a later has to conflict. It can't supplement. If the later supplements, you've still got the thing that's supplemented. Is that correct? Subparagraph A specifically relates to acquiring from licensed entities. The new subparagraph, D, as of 2004, says no dealer. Remember, there's A and B dealers, but B dealers are the only ones that this could possibly apply to, because they are breeders. This is talking about B dealers. No B dealer, no dealer shall knowingly obtain a dog or cat from a person who's not licensed. You're reading out part of it. It says no dealer or exhibitor. We have other people involved here, although I don't have any idea who they are. Okay, an exhibitor could also possibly have this apply to them, but it is still a subsequent- The bottom line here is it's really, really hard to understand, maybe because you're in the dog world and we're not, I don't know. It's really hard to understand how you derive the fact that D creates an exception from A when it doesn't say that, it doesn't mention that, it doesn't allude to that, and the history doesn't in no way corroborate your view that the point of D was to create an exception from the language that seems pretty clear, as Judge Rogers has discussed with you, is clear on the face of A. Well, this is our argument. The point is that before 2004, this particular regulation said you shall not, thou shalt not, the class B dealers and exhibitors shall not obtain a dog or cat from any person unless they've raised the animal themselves. The change, which I think it's clear that the more specific change is not thou shalt not anymore. The new regulation says- Well, it's thou shalt not, but you have to read it carefully to see how it says thou shalt not. I mean, I'm sympathetic with you. It looks a little bit like they tried to clean it up, but they cleaned it up in a way that was kind of misleading. Well, let's look at it from another- But we're lawyers and we're interpreting provisions, and that's why you have JOs there to interpret them for us, and it's not like they harm the person too much. They're just saying this is how it reads, and this is how it reads is you can't do it and you have a check. And, you know, I'm kind of sympathetic. I think a layperson could kind of read this in kind of a fuzzy way and get to the, with due respect, and come to that conclusion. It's really hard to do it if you're just, if you went to your lawyer and said, can I do this? Well, here's the thing. Let's look at a case from two days ago from the 11th Circuit where they looked at this exact thing, and it's all about deference, deference to the JO. And they said if it's a regulation, that's one kind of deference, but an interpretation of the JO is only entitled to deference if it's persuasive. That's 11th Circuit's- Why is it not persuasive? The JO rules based on what's in front of him. He had the only evidence in front of the JO was the party admission of the primary investigator for USDA, Thomas Rippey, and that admission was he told- Are you talking about that case or this case? I'm talking about this case. In this case, I thought you said the facts were all set. We know what the facts are. We're just interpreting what this regulation says. Well, the facts in terms of how the investigators interpreted this are certainly not something that the JO relied on. The JO threw all of that out. He did not consider that. Okay, but where the facts are that they weren't raised on the premises, but they said that they were the other way around. Those facts are clear here, right? Are not disputed. Correct, but the interpretation of the agency comes from the testimony of the agency's investigators, and that's really pivotal here. Judge McKeague, you said we're lawyers. I think you're out of time. Just one quick follow-up. Why is it not correct to say that under D, certainly an exhibitor can rely upon D and simply get this certificate, but D doesn't say that a class B dealer can rely upon it because a class B dealer is prohibited. So I understand it might not have been clear to your client, but that seems what the words say. So if you just think about that, because the language seems to be clear, the canons don't seem to help you, and the history doesn't seem to say what you say it says. Other than that, you're doing great. So think about that, and you can come back and tell us why that's wrong. Thank you, counsel. We appreciate your argument. Counsel. It please the court, I'm Charles Spicknall for the U.S. Department of Agriculture, and I think most of my arguments have been covered. You don't have to repeat them. Okay. I think in particular, you went through my argument, the Regulation A, which is what D doesn't create an exception to that. You know, when you read this, and you don't have to answer this if you don't want to, but when you read this, it almost looks like, first of all, the people closest to the scene said there's no violation here. And then the IJ, or whatever you call them, says there's no violation here. And then this judicial officer reads these regulations closely, and maybe correctly, and says, well, you really didn't intend to do anything wrong, so I'm not going to punish you, but don't do it again. What now has happened is, if he does this again, under the same facts, unknowingly, he does everything reasonably, gets the certificate and everything else, but if he makes a mistake because somebody lies to him, now he has not only violated the regulation, but he has done it a second time. And it just looks like he's being set up for you to take away his license. And there's a lot of stuff going on here in the background that, for I think obvious reasons, you don't even discuss them at all in your brief, maybe for whatever strategical reason. But why should we be, first of all, is what I'm speculating true? And if it is, should we be worried about that? Well, first, a second action could be brought if he does it again. But he testified that he's taken steps, he's now going to ask people when they come in, where did you get the dog? And so let's say they lie to him. Right. And secondly, he's changed the language of his form to make it clearer. But yes, he could be lied to. It could happen again. And if it's a strict liability statute, and if he does keep taking dogs from people that show up, giving them FIDO, and if they're lying to him, no matter what the form says and no matter what questions he asks, he's a repeat offender and you're going to take away his license. Right? No. I don't think that's so. I mean, in this case, the judicial officer considered the fact that his violations were unintentional. There was an outlet. I mean, that's the fairness probably is, you know, that's underlying this, that creates the concern. I think the judicial officer at the sanction phase, if it did happen again, first of all, the agency has discretion not to bring an action against him. Now that they have this decision and they understand what the lay of the land is, maybe they decide not to do it. But assuming they do, again, and assuming it goes... to go be, to go look behind these certificates with this guy. I don't know that that's necessarily true, that I would agree with that. I mean, they are, they do that anyways, with all of random sources. Even in the face of the direction from this woman that says, go get this guy? You don't dispute that she said that. Well, I think what she said was what the agency recommends as far as the sanction is revocation and the judicial officer said, absolutely not, it's not warranted here. He didn't knowingly violate the regulation. And what I think would happen in a second one, if they brought another one... Is she still in her same position? I believe so. You getting the drift about maybe a conversation you ought to have with your client? Yes, your honor, I do. But hopefully, I think it would probably come out the same way. I, you know, I can't say for sure, but in this one, at least, the judicial officer didn't take his license, he didn't do anything to his license and he didn't assess a civil penalty and the judicial officer has that discretion. Basically what you want here is a judicial imprimatur on the idea that it's strict liability in the sense that you can't rely on these certificates. That's right. There's no science or requirement. If they don't rely on it, but they take reasonable steps, then presumably the judicial officers will take into account that you've made attempts. That's right. Technically, if they get a whiff that you haven't, you could still have adverse consequences, whatever is provided by the... What is the worst thing that can happen to you for violating this? The worst thing is your license would be revetted. There's no criminal penalties or anything like that? There are criminal... There is a criminal provision in the statute and... Not that the worst that the agency could do is just refer it to a U.S. attorney or something like that. That's correct. Basically the most that the agency could do is take away your license. That's true. If they're on a rampage to take away his license, they've got a tool to do it with now and he's got to be super careful. Right, and that's what he said, but I think the outcome in this case shows that although they paint the judicial officer to be someone who's out to get people's licenses, that's not what he did. Okay, thank you. Further? Thank you, counsel. Thank you. First of all, I need to make sure that the court understands that there was tremendous harm done here. Mr. Woodenberg is out of business, as are virtually every single bee dealer with the exception of one in the United States. Even if the court takes the Secretary Wills Act's 2011... That's not because of this order, though. Oh, yes it is. It's because this order questioned his sources. Whether his sources were from legal places, so people for the ethical treatment of animals... Wait a minute, Ms. Cahn. In your own pleadings, you say that there were a whole lot of these dealers and by the time this incident occurred, because the underlying animus of the agency, these dealers had been whittled down to, I think you said, eight. All that happened before this case. This case didn't cause that. We don't know why all those dealers went away. Well, Your Honor, the last time we argued this in front of this court in the year 2000, that was also a finding in the Hodgins case that there appeared to be great bias on the part of the agency against these bee dealers and the need to scrutinize that. The critical thing is what this court ruled in the face of that was, we don't look at the motivation, but we do look at the credibility that that motivation indicates. That's exactly what you've got here. What I want to say quickly is I think... I don't even understand what you just said. We look at the credibility of what that motivation indicates. Credibility of who about what? We're trying to figure out what regulations mean. That's correct, Your Honor. What I was quoting for in terms of credibility was last page in the Hodgins decision from this court where the court opined that the inconsistencies and the lack of credibility of the agency in its zeal to go after bee dealers created a suspicion about the credibility of their interpretations. That's the critical point I would like to make here, is that the agency... The words say what they say, but we should interpret it a different way because they're bad people. No. I'm sorry. What I believe... I believe it was Judge Rogers who said, you could read it either way, so how can we second guess the judicial officer? This is how. This was a trial, and the investigators for the USDA testified through party admissions that the way the agency read this was that Mr. Woodenberg was not in violation. That was their primary investigator, and they hid him. The only evidence, and by hid him, I mean the judge issued a subpoena, said you've got to bring him here, and the USDA would not reveal where he was. The only evidence on the record was the investigator's testimony that the way we read this at USDA is that Mr. Woodenberg is not in violation if he has the certificates. Absolutely critical. We at the USDA... You're saying they changed their interpretation? Is that what you're saying? No. I don't think there's anything... I don't think there's any indication there that was their interpretation before the judicial officer ruled. Their interpretation... That's how agencies figure out when they apply these regulations. They read them and say this is what we think they mean. I'm having trouble seeing how credibility and bias and all of that affects... What about the... Unless they change, I can see you can say, well, if they generally applied it in a certain way and now they're changing, you could make some kind of argument. I'm not even sure that would work, but you're not making that argument. Shouldn't the dealer have had an opportunity to show how the USDA interpreted its regulation? There was an investigator... Well, no. If the way that the agency interprets it is through the J.O., he knows how they interpret it, unless you're arguing they've changed their interpretation. They have changed their interpretation because... I thought you just said a minute ago you weren't arguing that they changed their interpretation. The witnesses that were there, Mr. Rippey through party admissions and Mr. Dawson had an investigative report... Let's assume that this investigator thought the statutes mean exactly what you're arguing they are. Is he a lawyer? He's not a lawyer, but he's under the directive of the department. And here the interpretation is something that the department is... My point is agency interpretations, I would think, are not formed by what I would assume we would properly characterize this investigator as a lower level employee of the agency. Now they promulgated this rule, they went through rulemaking procedures, they told you what it meant, you read it one way and government reads it another way. I just am having trouble figuring out even if this investigator would say exactly what you said. Hey, this is what I think it means and this is what all my buddies in the field thinks it means. It doesn't mean he's right. It's not binding on the agency. If you go to the C.C. Baird case, this particular judicial officer said that the individual dealers should be asking, just like in this certification, should be asking whether they raise the animal. That's how the agency read it. And that was the testimony... The J.O. speaks for the Secretary of Agriculture, right? The J.O. is the final decider, but he decides on a record. And in this case... He's deciding a regulatory interpretation, which you say should be decided the way it's the same way a statute should be decided. It doesn't really matter too much what's in the record, does it, if you're just trying to figure out what it means? I think in terms of due process, if the people in the field are interpreting and applying it in a certain way, that's certainly relevant to his decision and that evidence was not permitted to be brought in. Thank you. Thank you. I appreciate your arguments. It's an interesting case, and please call the next case.